IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY

PAUL R. ROBINSON,

       Petitioner,

v.                                 Case No. 5:07-cv-00347

TIMOTHY CREASEY, Correctional Magistrate,
Mount Olive Correctional Complex,
PATRICIA HANSHAW, Supervisor, Mount Olive
Correctional Complex, THOMAS MCBRIDE,
Warden, Mount Olive Correctional Complex,
BEVERLY GANDEE, Senior Inmate Grievance
Coordinator, West Virginia Division of Corrections,
and JIM RUBENSTEIN, Commissioner, West Virginia
Division of Corrections,

       Respondents.

## PROPOSED FINDINGS AND RECOMMENDATION

On May 29, 2007, the Clerk's Office received and docketed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (docket sheet document # 3) and Petitioner's AEDPA Time Limit Statement (# 4). This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Pursuant to Rule 4 of the Rules Governing Section 2254 Proceedings in the United States District Courts, "[i]f it plainly appears . . . that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."

## PETITIONER'S GROUNDS FOR RELIEF

Petitioner asserts two grounds for relief in his petition. First, he alleges that the Respondents denied him due process of law when they "(1) failed to give him 'notice' of prohibited conduct; [and] (2) punished him based on an unknown, non-published restricted post order." (# 3 at 18).  Second, Petitioner alleges that the Respondents "denied him fundamental fairness when they permitted his job termination for obeying a direct order from CO2 Sherry Cook, Security Division." (Id.)  Petitioner contends that this conduct violated his due process and equal protection rights[1] under the Fifth and Fourteenth Amendments to the United States Constitution.  (Id.)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In March of 2003, Petitioner had a prison work assignment with the institutional post office/mail room at the Mount Olive Correctional Complex ("MOCC").  On March 6, 2003, Petitioner failed to deliver mail to one of the residence halls, Ash Hall. Petitioner asserts that, as he was delivering mail to Ash and Birch Halls, he was informed by Correctional Officer II Sherry Cook that there was a fog line count in progress at that time, and he was ordered back to his housing unit in Birch Hall.  Thus, he left the mail bags with Correctional Officer William Fraley for delivery to Ash Hall's unit team.  On March 7, 2003, Petitioner was terminated from his work assignment for: "Failure to deliver[] mail to Ash

---

[1] Petitioner's petition contains no further allegations or argument concerning an equal protection violation.  Accordingly, the undersigned has not addressed such a claim herein.

Unit.  Poor work attitude.  Inmate has been advised in the past of his poor work attitude."  (# 3 at 6, ¶ 4(d) and 10, ¶ 15; Ex. W).

Also on March 6, 2003, during a search of Petitioner's cell conducted by Corporal James Vaught, Jr. and Correctional Officer Christopher Sumpter, two unopened guitar strings were confiscated. Petitioner asserts that the extra guitar strings were re-issued to him by MOCC officials following his transfer from the West Virginia Penitentiary in Moundsville, West Virginia on March 29, 1995.

On March 13, 2003, Petitioner was informed that he was being moved out Birch Hall[2] because of contraband being found in his cell.  (# 3 at 12 ¶ 5).  On March 14, 2003, Petitioner received a disciplinary violation report for a violation of Rule 2.11 - Contraband.  At a disciplinary hearing held before Institutional Magistrate Timothy Creasey, on March 20, 2003, Petitioner admitted that he possessed the extra guitar strings, but argued that he was not given any notice that he was not allowed to have them in his cell because the prohibition was contained in a "restricted" Post Order (# 5 C-23) that is not made available to inmates.

On March 21, 2003, Petitioner was served with a hearing report finding him guilty of the violation.  Petitioner received a warning and reprimand, and his extra guitar strings were placed with his property in the state shop.  Although Petitioner did not receive any sanctions for his conduct, such as loss of good conduct time,

_____

[2] Petitioner's petition states that inmates who reside in Birch Hall receive certain special privileges that other inmates in the mainline population do not, such as special food privileges, sharing of entertainment items, and the opportunity to work multiple job assignments.  (# 3 at 15 n.2).

he contends that he was transferred out of Birch Hall as a punishment for the violation. (<u>Id.</u> at 10, ¶ 10).

On March 24, 2003, Petitioner filed an Administrative Appeal of Magistrate Creasey's disciplinary decision to Respondent McBride, which was denied on April 18, 2003. (<u>Id.</u> at 10, ¶¶ 11, 12; # 3, Exs. R and T). On May 6, 2003, Petitioner mailed an Administrative Appeal to Respondent Rubenstein, Commissioner of the West Virginia Division of Corrections ("WVDOC"). On May 21, 2003, Commissioner Rubenstein's designee, Respondent Beverly Gandee, Senior Inmate Grievance Coordinator for the WVDOC, affirmed Petitioner's disciplinary action. (<u>Id.</u> at 11, ¶ 14; # 3, Exs. U and V). Petitioner has also attached copies of all of his grievance documents concerning his job termination as exhibits to his petition. (# 3, Exs. A-L).

On November 7, 2003, Petitioner filed a Complaint under 42 U.S.C. § 1983, alleging the same claims raised in his present petition against the same defendants. On September 24, 2004, the Honorable David A. Faber, United States District Judge, dismissed the Complaint, without prejudice, making the following findings: (1) that Petitioner's termination from his prison job did not violate the Due Process Clause; (2) that Petitioner's claim regarding his disciplinary proceeding was not cognizable under section 1983 because Petitioner's disciplinary action had not been invalidated; and (3) that Petitioner had failed to exhaust his administrative remedies concerning his due process claims against

some of the defendants. (Robinson v. Creasey, Case No. 5:03-cv-2333, # 31).

On September 26, 2005, Petitioner filed a pro se Petition for a Writ of Habeas Corpus in the Circuit Court of Kanawha County, alleging the same grounds for relief as those raised herein.  That petition was transferred to the Circuit Court of Fayette County on September 21, 2005.  (# 4, Attach. # 1).  On January 19, 2006, the Circuit Court of Fayette County dismissed the petition.  (Id., Attach. # 2).  On June 2, 2006, Petitioner filed a Petition for Appeal from the denial of his Fayette County habeas corpus petition in the Supreme Court of Appeals of West Virginia (the "SCAWV").  The SCAWV refused the Petition for Appeal on December 6, 2006.  (Id., Attach. # 3).  Petitioner then filed the instant section 2254 petition on May 29, 2007.  (# 3).

## RELIEF SOUGHT

Petitioner requests that this federal court (1) vacate the guilty finding of the MOCC Magistrate court rendered against Petitioner on March 21, 2003, in Case No. MC03-0228-C, and expunge his record with regard to that finding; (2) vacate the decision of MOCC officials to terminate Petitioner's inmate job contract and reinstate Petitioner to his inmate job position, at his original rate of pay; (3) order the respondents to fully comply with all "notice requirements in order to clearly inform all inmates of prohibited conduct;" (4) order respondents to cease punishment of inmates for violating rules that are vague in nature; (5) order WVDOC officials to restore Petitioner to his former housing unit;

and (6) "deem inmate employment a 'valuable liberty interest'
mandating 'meaningful' minimal due process protections." (# 3 at
32-33).

### RESPONDENT'S RESPONSE

On July 26, 2007, Respondents, by counsel, Charles
Houdyschell, Jr., Senior Assistant Attorney General, filed a
Response to Petitioner's section 2254 petition. (# 14). In that
response, Respondents assert that Petitioner's petition contains
mixed issues of habeas corpus and civil rights. (Id. at 3). The
Response further states:

> In this case, like [his] prior action, he challenges both
> his prison discipline as well as his termination from his
> prison work assignment. However, the termination of a
> prisoner work assignment, which was separate and apart
> from the prison discipline, should not be the subject of
> a petition under 28 U.S.C. § 2254. Challenges to
> conditions of confinement are not properly brought by way
> of Federal habeas corpus proceedings. McCain v. Garrity,
> No. 3:02CV435, 2002 WL 32362032 (E.D. Va. July 16,
> 2002)(finding a claim relating to medical care was
> improperly advanced under 28 U.S.C. § 2241). In so
> holding, the court ruled:
>
>> "It is well settled that challenges to the
>> fact or length of confinement are properly
>> considered in the context of habeas corpus"
>> while challenges to the conditions of one's
>> confinement are properly brought as civil
>> rights actions. See Plyler v. Moore, 129 F.3d
>> 728, 733 (4th Cir. 1997)(citing Priser v.
>> Rodriquez, 411 U.S. 475, 487-88, 93 S. Ct.
>> 1827, 36 L. Ed.2d 439 (1973)(holding that a
>> challenge to the length of "actual confinement
>> in prison" must be brought as a habeas corpus
>> action)); Todd v. Baskerville, 712 F.2d 70, 72
>> (4th Cir. 1983). Because McCain's petition
>> challenges the conditions of his confinement
>> rather than the fact or length of his
>> confinement, it cannot proceed as a habeas

6

corpus action.  <u>See</u> <u>Huerta v. Hawk-Sawyer</u>, 16
Fed. Appx. 916, 917 (10th Cir.
2001)(concluding civil rights action was
appropriate procedural vehicle to challenge
conditions of confinement rather than petition
of a writ of habeas corpus); <u>Hernandez v.</u>
<u>Lamanna</u>, 16 Fed. Appx. 317, 320 (6th Cir.
2001); <u>Jenkins v. Haubert</u>, 179 F.3d 19, 27-28
(2d Cir. 1999)(distinguishing between
challenges to "conditions of confinement" and
challenges to "fact or duration of
confinement"); <u>Cook v. Texas Dept. of Criminal</u>
<u>Justice Transitional Planning Dept.</u>, 37 F.3d
166, 169 (5th Cir. 1995); <u>Crawford v. Bell</u>,
599 F.2d 890, 891-92 (9th Cir. 1979).

<u>McCain</u>, at *1.  In the instant case, the petitioner's
claims relating to his prison work assignment are outside
the scope of a habeas corpus proceeding.

(<u>Id.</u> at 3-4).  The Response further asserts that, in Petitioner's

prior section 1983 action, this federal court found that Petitioner

had no liberty or property interest in his prison work assignment;

thus, Petitioner's right to due process of law was not implicated

by his job termination.  (<u>Id.</u> at 4).

Respondents also contend that, to the extent that Petitioner's

claims could be addressed in a habeas corpus action under section

2254, the petition must be dismissed because it was filed beyond

the one-year statute of limitations contained in 28 U.S.C. §

2244(d)(1).  On April 24, 1996, a one-year limitation for filing of

federal habeas corpus petitions was enacted as part of the

Antiterrorism and Effective Death Penalty Act of 1996 ("the

AEDPA").  The AEDPA provides, in part, that:

(1) A 1-year period of limitation shall apply to an
application for a writ of habeas corpus by a person in

custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Section 2244(d)(2) further provides:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Respondents cite to Kimbrell v. Cockrell, 311 F.3d 361 (5th Cir. 2002) in support of this contention.  In Kimbrell, the petitioner filed a section 2254 petition in which he challenged a prison disciplinary proceeding that resulted in a change in his good-time earning status and extended his release date.  The Fifth Circuit found that the one-year statute of limitations contained in 28 U.S.C. 2244(d)(1) applies to section 2254 petitions attacking the prisoner's conviction, as well as those challenging the

calculation of time served, and that the statute of limitations commences to run at the conclusion of the disciplinary hearing, when the defendant learns of the disciplinary decision, not from the date of completion of the grievance process.  The court further noted, however, that "the timely pendency of prison grievance procedures would [toll] the one-year period."  Id. at 363-364.

Finally, Respondent asserts that Petitioner is entitled to no habeas corpus relief on his disciplinary claim because a warning or reprimand does not invoke the Due Process Clause.  (# 14 at 7-8).  Citing to the Supreme Court's decision in Kentucky Board of Corrections v. Thompson, the Response states:

> . . . We examine due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.

490 U.S. 454, 460 (1989).  The Thompson decision further states that "'liberty' and 'property' for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than an abstract need or desire and must be based upon more than a unilateral hope." Id. at 460.  (Id. at 7).

On September 25, 2007, Petitioner filed a reply brief in which he asserts that his prison employment record could affect whether he is ultimately granted parole and, thus, it does implicate a liberty interest and a due process right.  The reply brief states:

> One of the key factors considered by the West Virginia Board of Probation and Parole when an inmate applicant

9

> goes before them is[] their employment record, with the
> position by the Board being that if an inmate cannot
> maintain employment in prison, then he cannot maintain
> employment in the free world, thus he is more likely to
> re-offend and wind up back in prison.  The parole board
> does not want to hear an inmate asserting to them that he
> was terminated for no legitimate reason - the only thing
> that matters is he was terminated from his job position,
> that he failed to maintain employment.

(# 21 at 10).  Petitioner's reply further contends that the court
should grant Petitioner leeway on the statute of limitations issue
raised by Respondent because he is proceeding pro se and was not
notified of the one-year statute of limitations for filing section
2254 petitions.  (Id.)

## ANALYSIS

### A.  Petitioner's claim concerning his disciplinary action.

The undersigned agrees with Respondents' assertion that
Petitioner's petition contains mixed issues of habeas corpus and
civil rights.  In Petitioner's prior section 1983 action filed in
this court, Petitioner was correctly advised that he could not
recover damages for his allegedly unconstitutional disciplinary
action without having the disciplinary action declared invalid or
questioned through a writ of habeas corpus.  See Heck v. Humphrey,
512 U.S. 477 (1994); Edwards v. Balisok, 520 U.S. 641 (1997).
Hence, Petitioner's present attempt at seeking habeas corpus
relief.

However, a writ of habeas corpus concerning Petitioner's
disciplinary action is not warranted because Petitioner cannot

10

demonstrate a violation of his due process rights.  As previously
noted by Magistrate Judge VanDervort in his Proposed Findings and
Recommendation in Petitioner's section 1983 case:

> To determine whether an inmate retains a certain liberty
> interest, the Court must look to the nature of the
> claimed interest and determine whether the Due Process
> Clause applies.  <u>See</u> <u>Board of Regents v. Roth</u>, 408 U.S.
> [564] at 570-71, 92 S. Ct. [2701] at 2705-06 [(1972)].
> An inmate holds a protectible right in those interests to
> which he has a legitimate claim of entitlement.
> <u>Greenholtz v. Inmates of Nebraska Penal and Corr.</u>
> <u>Complex</u>, 442 U.S. 1, 7, 99 S. Ct. 2100, 2103, 60 L. Ed.2d
> 668 (1979)(*quoting* <u>Roth</u>, 408 U.S. at 577, 92 S. Ct, at
> 2709).

(<u>Robinson v. Creasey</u>, Case No. 5:03-cv-2333, # 26 at 12).

In the instant case, Petitioner did not suffer any loss of
good time credit or any actual sanction that would affect the
length of his sentence.  He merely received a written reprimand and
had his guitar strings placed with his state shop property.  In
<u>Sandin v. Connor</u>, 512 U.S. 472, 483-84 (1995), the Supreme Court
held that "these [liberty] interests will generally be limited to
freedom from restraint which, while not exceeding the sentence in
such an unexpected manner as to give rise to a protection by the
Due Process Clause of its own force . . . nonetheless imposes
atypical and significant hardship on the inmate in relation to the
ordinary incidents of prison life."  Petitioner suffered no
atypical or significant hardship from his written reprimand and
having his guitar strings stored in the state shop.

Petitioner also alleges that he was transferred to another

housing assignment as a result of the disciplinary action. However, the Supreme Court has held that an inmate has no justifiable expectation that he will be incarcerated in any particular correctional facility. In <u>Meachum v. Fano</u>, 427 U.S. 215 (1976) and <u>Montanye v. Haymes</u>, 427 U.S. 236 (1976), the Court held that an intrastate transfer from one prison facility to another "does not directly implicate the Due Process Clause of the Fourteenth Amendment." <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245 (1983). Specifically, the court stated:

> The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in <u>any</u> of its prisons.
>
> Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.

<u>Id.</u> (quoting <u>Meachum</u>, 427 U.S. at 224-225). In <u>Olim</u>, the Court further wrote that "a holding that '<u>any</u> substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts.'" <u>Id.</u> (quoting <u>Meachum</u>, 427 U.S. at 225).

Thus, Plaintiff has no constitutional right to be incarcerated in a particular facility.  This rationale applies to transfers between housing units at the same facility, as well.  Petitioner's move from a unit that received some special privileges did not cause him to suffer any atypical or significant hardship outside of normal prison life.

Petitioner's sanctions were not so substantial as to implicate a liberty or property interest sufficient to give rise to a violation of Petitioner's due process rights.  Therefore, the undersigned proposes that the presiding District Judge **FIND** that Petitioner is not entitled to any habeas corpus relief on this claim.

**B.    Petitioner's claim concerning his job termination.**

Petitioner's claim that his right to due process was violated by the termination of his prison employment was properly addressed as a civil rights claim in Petitioner's prior section 1983 action. As noted by Respondents, and by the undersigned herein, this federal court previously found that Petitioner has no liberty or property interest in his prison employment. <u>See</u>, *e.g.*, <u>Altizer v. Paderick</u>, 569 F.2d 812, 813 (4th Cir. 1978)(classification and work assignments are matters of prison administrative discretion and are not matters entitled to due process hearings). (<u>Robinson v. Creasey</u>, Case No. 5:03-cv-2333, # 26 at 13-14). The undersigned also notes that Petitioner did not object to this finding in the

13

prior case.  (Id., # 31 at 11).

   This identical issue was litigated against identical parties in Petitioner's prior section 1983 action.  The Honorable David A. Faber, the presiding District Judge in that matter, made an actual determination that Petitioner has no liberty or property interest in his prison employment.  Judge Faber dismissed the section 1983 case without prejudice, however, due to Petitioner's failure to exhaust administrative remedies concerning another part of his Complaint.  Respondents assert that, even if collateral estoppel does not apply to Judge Faber's prior ruling, the same analysis would nonetheless apply to this claim.[3]  The undersigned agrees.

   Because Petitioner has no liberty or property interest in his prison employment, he cannot establish a due process violation based upon his termination from that employment.  Petitioner's contention that his prison employment record could affect his parole determination is too remote to give rise to due process protections in prison employment either.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has failed to demonstrate a constitutional violation

_____

   [3] A party seeking to rely on the doctrine of collateral estoppel is obliged to establish five elements: (1) that the issue sought to be precluded is identical to one previously litigated; (2) that the issue was actually determined in the prior proceeding; (3) that the issue's determination was a critical and necessary part of the decision in the prior proceeding; (4) that the prior judgment is final and valid; and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum.  See Collins v. Pond Creek Mining Co., 468 F.3d 213 (4th Cir. 2006).

that would entitle him to habeas corpus relief or any of the relief sought in his section 2254 petition.

**C.   Petitioner's section 2254 petition is untimely.**

Even if Petitioner could establish a right to habeas corpus relief based upon a violation of his due process rights, his section 2254 petition is untimely.  As noted by Respondents, in <u>Kimbrell</u>, the Fifth Circuit found that the one-year statute of limitations contained in 28 U.S.C. 2244(d)(1) commences to run at the conclusion of the disciplinary hearing, when the defendant learns of the disciplinary decision, not from the date of completion of the grievance process; although, the time period is tolled during the pendency of timely prison grievances.  Other circuits have held that the statue of limitations begins to run after the inmate has exhausted the available administrative remedies.  <u>See</u>, *e.g.*, <u>Dulworth v. Evans</u>, 442 F.3d 1265, 1268 (10th Cir. 2006).

The United State Court of Appeals for the Fourth Circuit also addressed the application of the one-year statute of limitations in section 2244(d)(1) to habeas corpus petitions that do not directly implicate a criminal judgment in <u>Wade v. Robinson</u>, 327 F.3d 328 (4th Cir. 2003).  In that case, the petitioner, who had good conduct credits rescinded following his parole revocation by the Virginia Parole Board, filed a section 2254 petition for a writ of habeas corpus.  The district court dismissed the petition as

untimely under section 2244(d)(1).  The Fourth Circuit affirmed the judgment, finding as follows:

> Section 2244(d)(1) is not alone in not distinguishing among habeas claims that challenge state court judgments and those that challenge another aspect of custody.  As section 2254 makes clear, the defining feature of a state prisoner's habeas claim is that it presents a challenge to his <u>custody</u>. * * * Section 2244(d)(1), governing "application[s] for a writ of habeas corpus," applies to claims challenging any aspect of custody so long as the petitioner is in custody pursuant to a state court judgment. [Emphasis in original].

<u>Wade</u>, 327 F.3d at 331.[4]

Under <u>Kimbrell</u>, Petitioner's one-year statute of limitations began to run on March 21, 2003, the day he received his hearing report from Magistrate Creasey.  However, the one-year time period was tolled from March 24, 2003, when Petitioner filed his G-2 level grievance appeal, until May 21, 2003, when his G-3 level grievance appeal was denied.  Under the rationale of <u>Dulworth</u>, the statute of limitations began to run on May 21, 2003, upon expiration of his administrative appeals concerning his disciplinary action. Petitioner then filed his section 1983 action on November 7, 2003. However, that action is not a "properly filed application for State post-conviction or other collateral review."  <u>See</u> 28 U.S.C. § 2244(d)(2); <u>Duncan v. Walker</u>, 533 U.S. 167 (2001).  Therefore, the filing of that action did not toll the statute of limitations,

_____

[4]   The undersigned notes that both <u>Kimbrell</u> and <u>Wade</u> involved inmates whose disciplinary actions resulted in the loss of good-time credits, which, if reversed, would affect the length of the inmate's sentence.  As noted previously, Petitioner suffered no sanction that would affect the length of his sentence.

which expired, at the latest, on or about May 21, 2004.[5]
Petitioner did not file the instant section 2254 petition until May
29, 2007, over three years later.  Accordingly, the undersigned
proposes that the presiding District Judge **FIND** that Petitioner's
section 2254 petition is untimely under 28 U.S.C. § 2244(d).
Furthermore, the undersigned proposes that the presiding District
Judge **FIND** that Petitioner's pro se status and lack of knowledge
concerning the one-year statute of limitations is not a sufficient
basis for equitable tolling of the statute.  See, *e.g.*, Marsh v.
Soares, 223 F.3d 1217, 1220 (10th Cir. 2000)(Ignorance of the law,
including existence of AEDPA, insufficient to warrant equitable
tolling); Miller v. Marr, 141 F.3d 976, 978 (10th Cir,
1998)(equitable tolling not justified by the fact that the prisoner
did not know about AEDPA time limitation).

### RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED**
that the presiding District Judge **DENY** Petitioner's Petition for a
Writ of Habeas Corpus under 28 U.S.C. § 2254, and **DISMISS** this
civil action from the docket of the court.

The parties are notified that this Proposed Findings and
Recommendation is hereby **FILED**, and a copy will be submitted to the
Honorable Thomas E. Johnston, United States District Judge.

---

[5] Although Petitioner filed a Petition for a Writ of Habeas Corpus
in the Circuit Court of Kanawha County, that petition was not filed until
September 26, 2005, over a year after the expiration of the statute of
limitations.

17

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and counsel of record.

| September 12, 2008 | *Mary E. Stanley* |
| Date | Mary E. Stanley |
| | United States Magistrate Judge |