## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

PAUL R. ROBINSON,

                Petitioner,

v.                                            CIVIL ACTION NO. 5:07-cv-00347

TIMOTHY CREASEY, et al.,

                Respondents.

### MEMORANDUM OPINION

Pending before the Court are Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [Docket 3-6] and Petitioner's Motion to Renew Prior Motion for Leave to Proceed in Forma Pauperis [Docket 26].[1]  By Standing Order entered on August 1, 2006, and filed in this case on May 29, 2007, this action was referred to United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation (PF&R).  Magistrate Judge Stanley entered a  PF&R [Docket 24] on September 12, 2008, recommending that the Court deny Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 and dismiss this action from the Court's docket.  Objections to Magistrate Judge Stanley's PF&R were due by September

---

[1] On July 5, 2007, United States Magistrate Judge Mary E. Stanley entered an order denying Petitioner's Application to Proceed in forma pauperis [Docket 11]. The magistrate judge found that Petitioner had already paid the $5.00 filing fee required for a habeas corpus petition. (Docket 11 at 1.)  However, the magistrate judge noted that Petitioner could file another application if an evidentiary hearing was held. (*Id.*)  No evidentiary hearing was held, and the Court notes that the $5.00 fee has been paid.  Accordingly, Petitioner's Motion to Renew Prior Motion for Leave to Proceed in Forma Pauperis [Docket 26] is **DENIED**.

29, 2008, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Petitioner timely filed objections to the PF&R on September 22, 2008. This matter is now ripe for the Court's consideration.

## *I. BACKGROUND AND PROCEDURAL HISTORY*

The full factual and procedural history of this case is set forth in the PF&R. In short, this action arises out of two incidents that occurred on March 6, 2003. On that date, Petitioner, an inmate assigned to work as a mail delivery person at Mount Olive Correctional Center (Mt. Olive), failed to complete his work assignment. Subsequently, Petitioner received an "Inmate Work Program Termination Slip" stating that he was terminated from his job for "[f]ailure to delivery [sic] mail . . . [and] for poor work attitude." (Docket 3-7 at 9.) Petitioner alleges that he was unable to complete his assignment because an officer instructed him to return to his cell.

Also on March 6, 2003, a search of Petitioner's cell resulted in the confiscation of two guitar strings, which were placed with Petitioner's property in state shop. On March 14, 2003, Petitioner received a disciplinary violation report for possessing contraband. At a disciplinary hearing before Correctional Magistrate Timothy Creasey on March 20, 2003, Petitioner admitted to possessing the guitar strings but claimed that he was not given notice that guitar strings were prohibited. The following day, Petitioner received a hearing report finding him guilty of the violation. The hearing report issued a warning and reprimand rather than a sanction. Plaintiff alleges that in addition to the warning, he was transferred to a different residence hall as a result of his violation.

Petitioner filed an administrative appeal of Magistrate Creasey's disciplinary decision to the warden at Mt. Olive, Respondent Thomas McBride, which was denied on April 18, 2003. Thereafter, Petitioner appealed the denial to Respondent Jim Rubenstein, Commissioner of the West

Virginia Division of Corrections. Rubenstein's designee, Respondent Beverly Gandee, affirmed the disciplinary action.

On November 7, 2003, Petitioner filed an action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of West Virginia, alleging the same claims as in the present petition. The Honorable David A. Faber dismissed Petitioner's complaint without prejudice finding that (1) "[b]ecause the disciplinary judgment had never been invalidated . . . § 1983 [was] an improper vehicle for the plaintiff's action," (2) Petitioner's "termination from his prison job did not violate the Due Process Clause," and (3) Petitioner "failed to exhaust his administrative remedies respecting his claim that defendants Thomas McBride, Jim Rubenstein, and Beverly Gandee denied him due process." *Robinson v. Creasy*, No. 5:03-cv-2333, Docket 31 (S.D. W. Va. September 24, 2004) (Faber, J.).

Petitioner filed a pro se Petition for a Writ of Habeas Corpus in the Circuit Court of Kanawha County on September 26, 2005, alleging the same facts as presented in this case. The petition was transferred to the Circuit Court of Fayette County where it was dismissed on January 19, 2006. Thereafter, Petitioner filed a Petition for Appeal, which was denied by the Supreme Court of Appeals of West Virginia on December 6, 2006. Plaintiff filed the instant action on May 29, 2007.

Petitioner argues that Respondents denied him due process of law when they "(1) failed to give him 'notice' of prohibited conduct; [and] (2) punished him based on an unknown, non-published restricted post order." (Docket 3-6 at 18.) Petitioner also claims that Respondents "denied him fundamental fairness when they terminated his job." (*Id.*) Magistrate Judge Stanley found that Petitioner's claims were without merit and recommended that the Court dismiss this action. Specifically, with respect to Petitioner's claim concerning his disciplinary action, Magistrate

3

Judge Stanley found that Petitioner was not entitled to any habeas corpus relief because his sanctions were not so substantial as to implicate a liberty or property interest sufficient to give rise to a violation of Petitioner's due process rights. Regarding Petitioner's job termination, Magistrate Judge Stanley found that Petitioner is not entitled to habeas corpus relief because Petitioner has no liberty or property interest in prison employment. Finally, Magistrate Judge Stanley found that Petitioner's claims were untimely.

## II. STANDARD OF REVIEW

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). When reviewing the portions of the PF&R de novo, the Court will consider the fact that Plaintiff is acting pro se, and his filings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

## III. OBJECTIONS TO THE PF&R

Petitioner makes four objections to the PF&R, and each is addressed below.

  *A.  Objection to "Everything Respondents Used to Support their Contentions"*

  In its entirety, Petitioner's first objection states, "The first objection is to everything the respondent's [sic] used to support their contentions, beginning on page 6 and ending on page 10 of Judge Stanley's Proposed Findings and Recommendations." (Docket 25 at 1.)

  When a party makes objections, but these objections are so general or conclusory that they fail to direct the district court to any specific error by the magistrate judge, de novo review is unnecessary. *Orpiano*, 687 F.2d at 47; *Howard's Yellow Cabs, Inc. v. United States*, 987 F. Supp. 469, 474 (W.D.N.C. 1997). A litigant who makes only vague objections to the magistrate judge's findings prevents the district court from focusing on disputed issues and thus renders the initial referral to the magistrate judge useless. *Howard's Yellow Cabs*, 987 F. Supp. at 474. A general objection does not meet the requirements of 28 U.S.C. § 636(b)(1), and failure to file a specific objection constitutes a waiver of the right to de novo review. *Id.* (citing *Mercado v. Perez Vega*, 853 F. Supp. 42, 44 (D.P.R.1993)).

  Petitioner's first objection does not call the Court's attention to any specific error by the magistrate judge. Instead, it merely objects to facts relied on by the magistrate judge in general. This is precisely the type of vague and conclusory objection, contemplated by *Orpiano* and *Howard's Yellow Cabs, Inc.*, that does not merit review by this Court. The Court **FINDS** that Plaintiff's first objection is general and conclusory and that de novo review of the issues raised is not warranted. Therefore, it is **OVERRULED**.

  *B.  Objection to Finding that No Violation of Petitioner's Due Process Rights Occurred*

  Petitioner objects to Magistrate Judge Stanley's finding that he cannot demonstrate a violation of his due process rights. Specifically, Petitioner contends that, for the purpose of

accessing his due process claims, it is irrelevant that he only received a warning and reprimand for his infraction. In support of his contention, he cites to *Grant v. Riley*, 1993 WL 485600 at *3 (S.D.N.Y. 1993),[2] which states, "One of the basic components of due process is notice of what is prohibited."

While notice is a basic requirement for due process, "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (citing U.S. Const., amend. XIV, § 1 ("Nor shall any State deprive any person of life, liberty, or property, without due process of law")). "Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process." *Id.* Therefore, the fact that Petitioner merely received a warning, reprimand, and possibly a different housing assignment is not only relevant but is crucial to this analysis.

---

[2] In *Grant*, the plaintiff was placed in keeplock after violating a rule that was allegedly not made known to him. *Grant*, 1993 WL 485600 at *3. "Keeplock" is a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in the normal prison routine, and denied contact with other inmates. *Gittens v. Lefevre*, 891 F.2d 38, 39 (2nd Cir. 1989). The *Grant* court found that plaintiff had a due process right to notice that his behavior was punishable before being deprived of a substantive right to life, liberty, or property and held that the issue of whether notice was given "present[ed] a triable issue of fact." *Grant*, 1993 WL 485600 at *3. It is likely that the holding in *Grant* is no longer good law in light of *Sandin v. Connor*, 512 U.S. 472, 487 (1995) (holding that prisoner's discipline in segregated confinement did not implicate due process liberty interest).

However, it is important to note that, in a footnote, the *Grant* court addressed another alleged violation of plaintiff's due process rights that resulted in an additional work assignment given to the prisoner. *Grant*, 1993 WL 485600 at *5 fn 2. The court found that an additional work assignment "did not implicate a protected interest [and, therefore,] any alleged violations of procedure [did] not rise to a constitutional level." *Id.* A warning and a re-assignment of living quarters is more akin to an additional work assignment that it is to segregation. Thus, even under *Grant*, Petitioner would have no liberty interest at stake.

6

In making her findings, Magistrate Judge Stanley cited to *Sandin v. Connor*, which states that liberty interests "will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to a protection by the Due Process Clause of its own force . . . nonetheless imposes atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." 512 U.S. 472, 483–84 (1995). The magistrate judge found that unlike a sanction that would affect the length of Petitioner's sentence, a written warning and the removal of Petitioner's guitar strings to the state shop did not constitute the required hardship under *Sandin*. (Docket 24 at 11.) In addition, the magistrate judge found that Petitioner had no constitutional right to be placed in a particular housing unit (*Id.* at 13 (citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (holding that a prisoner's "conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons" (emphasis in original))).)

This Court agrees with Magistrate Judge Stanley's analysis. Under *Sandin*, Petitioner did not suffer an atypical or significant hardship amounting to the deprivation of a due process right to liberty or property. Therefore, the Court need not determine whether the State's procedures comported with due process as Petitioner claims in his objection. Accordingly, Petitioner is not entitled to habeas relief on this claim, and his second objection is **OVERRULED**.

   C. *Objection to Finding that No Liberty Interest Exists in Prison Employment*

Petitioner objects to the magistrate judge's finding that Petitioner had no liberty interest in prison employment. Petitioner argues that the possibility of segregation resulting from the discontinuation of a prison job assignment creates a liberty interest in continued employment. Nothing in the record indicates that Petitioner's employment dismissal resulted in segregated

confinement or that discontinuation of prison employment alone could result in segregation. However, even if it did, the Supreme Court has determined that a prisoner's discipline in segregated confinement, in and of itself, does not implicate a due process liberty interest. *Sandin*, 515 U.S. at 487. Therefore, Petitioner has failed to show that his discontinuation of employment amounted to a liberty interest protected by the Due Process Clause. Accordingly, Petitioner's third objection is **OVERRULED**.

### D. Objection to Finding that Action is Untimely

Petitioner objects to Magistrate Judge Stanley's finding that his 42 U.S.C. § 2254 claim was not timely filed. Petitioner does not contest that a one-year statute of limitations provided in the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244(d)(1)(A), applies to this action. Instead, Petitioner claims that each of the following timely filings tolled the AEDPA's one-year limitation: (1) administrative grievances, (2) the action in Kanawha Circuit Court, (3) the appeal to the West Virginia Supreme Court, and (4) various other actions filed in state court.[3] Petitioner claims that because the time period for the statute of limitations was tolled during the pendency of the above proceedings, the instant claim was timely filed.

The one-year statute of limitations provided in the AEDPA runs "from the latest of" several potential occurrences. 28 U.S.C. § 2244(d)(1)(A)–(D). In this case, the relevant starting date is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* § 2244(d)(1)(D); *see also*, *Wade v. Robinson*, 327 F.3d 328, 333 (4th Cir. 2003). Magistrate Judge Stanley found the date Petitioner's claims could have

---

[3] Petitioner does not object to the magistrate judge's finding that Petitioner's § 1983 action did not toll the statute of limitations.

8

been discovered through due diligence was March 21, 2003—the date Petitioner received his hearing report from Magistrate Creasy.[4] Magistrate Judge Stanley also found that the statute of limitations was tolled from March 24, 2003 until May 21, 2003. As such, the statute of limitations ran from May 21, 2003, until May 18, 2004,[5] when it expired.

The other two proceedings relating to this action, which Petitioner claims tolled the statute of limitations did not occur until well after the statute of limitations had expired: the action in the Circuit Court of Kanawha County was not filed until September 26, 2005, and the appeal to the West Virginia Supreme Court of Appeals was not filed until December 6, 2006. Thus, these proceedings did not toll the statute of limitations.

In addition, Petitioner claims that he "had a Rule 35(b) [sic] pending in State Court from June 1996, until March 2000 . . .[,] had a Petition for Writ of Habeas Corpus pending in State Court

---

[4] The magistrate judge determined the date from which Petitioner's claims could have been discovered in accordance with 28 U.S.C. § 2244(d)(1)(D) by applying *Kimbrell v. Cockrell*, 311 F.3d 361 (5th Cir. 2002) (holding that one-year period commences to run at the conclusion of the disciplinary hearing and is tolled during pendency of timely prison grievances). However, the magistrate judge recognized that there is a circuit split regarding whether the statute of limitations begins to run at the conclusion of a disciplinary hearing or after a petitioner's administrative remedies are exhausted. (Docket 24 at 15.) The Court of Appeals for the Tenth Circuit has held that when a petitioner timely exhausts his administrative remedies, the one-year limitations period under the AEDPA does not commence until administrative appeal is rejected. *Dulworth v. Evans*, 442 F.3d 1265, 1268 (10th Cir. 2006). The analysis in *Dulworth* appears to be the most consistent with previous holdings in the Fourth Circuit. *See Wade*, 327 F.3d at 333 (holding that under § 2244(d)(1)(D), the date a prisoner's parole revocation became *final* was the date from which the statute of limitations began to run). In any event, the Court need not decide which date to apply because Petitioner has not objected to the magistrate judge's finding that the statute of limitations began to run on March 21, 2003.

[5] The magistrate judge found that at the latest, the statute of limitations expired on May 21, 2004, which would be the correct date if the statute of limitations began to run at the completion of the grievance process on May 21, 2003. However, if the statute of limitations began to run on March 21, 2003, but was tolled from March 24, 2003 until May 21, 2003, the statute of limitations would have expired on May 18, 2004.

from 1998 until 2006 . . . [,] and currently has a Rule 35(b) [sic] in the State Court of conviction, and some other motions attacking his conviction, all of which were filed in 2003." (Docket 25 at 3.) Under the AEDPA, "[t]he time during which a properly filed application for State post-conviction or other collateral review *with respect to the pertinent judgment or claim* is pending shall not be counted toward any period of limitation under [28 U.S.C. § 2244(d)]." 28 U.S.C. § 2244(d)(2) (emphasis added). Nothing in the record indicates that the actions to which Petitioner is referring are related to the instant proceeding.[6] As such, they do not operate to toll the statute of limitations. Accordingly, Petitioner's objection is **OVERRULED**.

## *IV. CONCLUSION*

For the reasons stated above, the Court **ADOPTS** the recommendation contained in the PF&R [Docket 24], **DENIES** Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 [Docket 3-6], **DENIES** Petitioner's Motion to Renew Prior Motion for Leave to Proceed in Forma Pauperis [Docket 26], and **REMOVES** this matter from the Court's docket. A separate Judgment Order will enter this day implementing the rulings contained herein.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 21, 2009

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[6] To the contrary, the first two proceedings were filed before the actions giving rise to this proceeding.